

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2017

## ROBERT LINDIMENT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 13-03935     James M. Lammey, Jr., Judge**

---

### No. W2015-01927-CCA-R3-PC

---

The petitioner, Robert Lindiment, appeals the denial of his petition for post-conviction relief, arguing that the court erred in finding that he received effective assistance of counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Ernest J. Beasley (on appeal) and Megan R. House (at hearing), Memphis, Tennessee, for the appellant, Robert Lindiment.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Glen C. Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On August 15, 2013, the then-seventeen-year-old petitioner and a co-defendant, Corey Mitchell, were indicted by the Shelby County Grand Jury for attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony. On April 7, 2014, the petitioner, who had turned eighteen, pled guilty to the attempted first degree murder charge, a Class A felony, in exchange for a fifteen-year sentence at thirty percent as a Range I offender. Pursuant to the terms of his negotiated plea agreement, the remaining charges were dismissed.

At the joint guilty plea hearing, the prosecutor recited the following factual basis for the petitioner and Mr. Mitchell's pleas:

> Had the matters respectively proceeded to trial, the State submits that [the] proof would have been on February 2, 2013, at approximately 11 p.m., the victim Jeremiah Mays was at 2574 Malone here in Memphis, Shelby County[,] when he was confronted by two male blacks. He didn't know them very well. He did, however, know they were in a rival gang.
>
> There had been some confrontation prior to this about apparent allegation [sic] there may have been a prior shooting prior to this date. The males were upset with Mays because they felt he was flirting with their girlfriends. There was an argument that escalated when apparently [the] victim thought bought [sic] may have pulled guns but according to the co[-]defendant it was actually [the petitioner] who . . . fired his weapon several times at the victim, striking him twice in the leg. Corey Mitchell apparently was the driver of the vehicle as it drove by.
>
> All events did occur in Memphis, Shelby County, Tennessee. . . . [T]he victim did pick out both out of a photo lineup and sa[id] one was the driver Corey Mitchell and also [the petitioner] was the shooter in fact.
>
> [The petitioner] did in fact give a confession saying he was the shooter and that Corey Mitchell did in fact drive the vehicle. And there were several Facebook pages taken where there was a photo on both Facebook pages with guns very similar to those described by the victim.

On October 10, 2014, the petitioner filed a pro se petition for post-conviction relief, followed by an amended petition after the appointment of counsel. In his petitions, the petitioner raised claims of ineffective assistance of trial counsel and an unknowing and involuntary guilty plea. Specifically, he alleged that his plea was the product of ignorance, incomprehension, and coercion based on his youth, limited education, and diminished mental capacity. The petitioner asserted that trial counsel failed to adequately explain the consequences of his plea and coerced him to enter the plea. The petitioner asserted that, were it not for trial counsel's deficiencies in representation, he would not have pled guilty but instead would have proceeded to trial.

At the June 30, 2015 evidentiary hearing, the nineteen-year-old petitioner testified that he had a seventh grade education and had been diagnosed with bipolar disorder and schizophrenia. The petitioner denied that trial counsel explained his rights to him, but he "[s]ort of" remembered the trial court's discussing his rights at the guilty plea hearing.

-2-

He said he did not understand that he would not have a trial if he pled guilty and thought he would be sentenced to two years if he entered a guilty plea. He said that he did not want to plead guilty and did not understand the consequences of a guilty plea.

On cross-examination, the petitioner admitted that he had prior cases in juvenile court for robbery, attempted burglary, domestic assault, and disorderly conduct and that he was a member of the Hoover Crips Street gang. He acknowledged giving a statement in the instant case, admitting that he shot "at the victim." He said that trial counsel provided him with a copy of the discovery and that he knew the victim had identified him as the shooter. The petitioner said he had wanted to have a trial so that he could "at least tell [his] side." However, he admitted he did not inform the trial court at the plea hearing that he wanted a trial, saying he did not know he was allowed to speak to the court because he was not permitted to do so in juvenile court and "never had to put up with judges."

The petitioner said that trial counsel coerced him into pleading guilty, explaining that he had no input in the case and that "everything was [trial counsel's] decision." He told trial counsel that the police officers had "illegally questioned" him and coerced him into giving a statement, but counsel did not agree with him. The petitioner recalled telling the trial court that he had not been promised or threatened with anything in exchange for his guilty plea but said that he was coerced and "had to lie."

Trial counsel testified that he represented the petitioner in juvenile court and in criminal court, after his case was transferred to that court. Counsel said that he met with the petitioner numerous times and was aware that the petitioner "at times need[ed] some assistance in understanding things." Counsel explained to the petitioner "anything and everything" as to the procedural and substantive aspects of the case, as well as the sentence the petitioner would receive as a result of the guilty plea. Counsel said the petitioner never told him that he wanted to go to trial.

Trial counsel said that the victim's testimony was "very believable" and that the discovery included photographs of the petitioner, armed with numerous assault rifles, on various social media sites. Counsel explained to the petitioner that the State's offer was excellent, in light of the seriousness of the case and the overwhelming amount of proof, as well as the fact that the State was willing to dismiss the other charges, but he did not make any recommendations to the petitioner. Trial counsel said the petitioner understood that if he were convicted of the firearm charge, he faced a sentence of six years at 100%, and once the State removed that charge, the petitioner had no problem accepting the plea offer. Counsel said that he and the petitioner "always had pretty good dialogue" and never had any problems discussing the plea offer. The petitioner discussed the plea offer

with his mother, was given ample opportunity to consider it, and "[a]bsolutely" chose to voluntarily accept the offer.

In response to questioning from the post-conviction court, trial counsel said that the petitioner had two psychological evaluations: one in juvenile court during which the petitioner reported that he had completed the tenth grade, contrary to his testimony at the evidentiary hearing; and a second one in criminal court after his case was transferred. Counsel said he discussed the findings of the evaluations with the petitioner's doctors and counselors, who informed counsel that the petitioner was "manipulative and was very good at exaggerating his mental health issue when it best suit[ed] him." Also, the petitioner sent a "very professionally typed letter" to trial counsel, requesting a copy of the plea agreement and judgment form.

At the conclusion of the hearing, the post-conviction court denied the petition, finding that trial counsel had not been ineffective and that the petitioner had lied under oath. The court subsequently entered an order incorporating the transcript of the evidentiary hearing detailing the court's oral findings of fact and conclusions of law.

## ANALYIS

The petitioner argues that trial counsel's deficient representation caused him to waive his rights and plead guilty and that he did not understand what he was doing in pleading guilty. The petitioner also asserts that trial counsel failed to investigate the petitioner's competency.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of the post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's

deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Trial counsel testified that he secured a plea agreement for the petitioner for fifteen years at thirty percent and dismissal of the remaining charges, even in light of the

-5-

petitioner's confession, the victim's identification of the petitioner as the shooter, and the overwhelming evidence the State could have introduced at trial. He said he never had any problems discussing the offer with the petitioner. Further, the petitioner discussed the offer with his mother and "[a]bsolutely" chose to voluntarily plead guilty once the State agreed to dismiss the firearm charge. As to the petitioner's competency, trial counsel testified that two psychological evaluations were performed on the petitioner.

The petitioner attached the results of one of those evaluations to his amended petition. In that report, Dr. Wyatt L. Nichols, a clinical psychologist, concluded that the petitioner had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him"; that the petitioner understood the nature of the legal process, the charge against him, and the consequences that could follow; that the petitioner could "advise counsel and participate in his own defense if the attorney is patient and concrete"; and that, at the time of the offenses, "severe mental disease or defect did not prevent the [petitioner] from appreciating the nature and wrongfulness of such acts."

In denying relief on the petitioner's claims, the post-conviction court accredited the testimony of trial counsel over that of the petitioner, stating that the petitioner "was less than candid with the court and may have committed aggravated perjury. Petitioner's testimony was simply incredulous." The court also determined that the petitioner's rights were explained to him "in detail" at the guilty plea hearing and that the petitioner had failed to prove ineffective assistance of trial counsel. The record amply supports these determinations. The petitioner has not, therefore, met his burden of demonstrating that he received ineffective assistance of counsel or that his guilty plea was unknowing and involuntary.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition.

_____
ALAN E. GLENN, JUDGE